**FILED**

**June 8, 2017**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:28 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Rosa Jiménez, | ) | Docket No. 2016-07-2377 |
| Employee, | ) | |
| v. | ) | |
| Xclusive Staffing of Tennessee, LLC, | ) | State File No. 98498-2015 |
| Employer, | ) | |
| And | ) | |
| American Compensation Insurance | ) | Judge Kenneth M. Switzer |
| Co., | ) | |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court on June 6, 2017, on Ms. Jiménez's Request for Expedited Hearing. Presently, the legal issue is whether she sustained an injury arising primarily out of and in the course and scope of her employment with Xclusive Staffing of Tennessee, LLC while performing housekeeping duties at a hotel. The parties dispute the circumstances of her alleged injury and medical causation. For the reasons set forth below, the Court holds that Ms. Jiménez is likely to prevail at a hearing on the merits that her injury arose primarily out of and in the course and scope of her employment with Xclusive and grants her requested relief.[1]

### History of Claim

*Mechanism of injury*

Ms. Jiménez testified that on December 9, 2015, as she was making a bed, she attempted to place a pillow inside a pillow case using a jerking motion. She felt sudden

---

[1] The Dispute Certification Notice additionally lists Ms. Jiménez's entitlement to temporary disability benefits as an issue, but the parties stipulated that the Court may reserve ruling on that issue. Likewise, Ms. Jiménez will seek reimbursement of past medical bills at a later date. The parties utilized the services of a court-certified interpreter, Judith Kristy, at the Expedited Hearing, as Ms. Jiménez principally speaks Spanish.

1

pain in her right shoulder. According to Ms. Jiménez, she never suffered injury to her shoulder until that date. She immediately reported the shoulder injury. Ms. Jiménez confirmed these facts in her affidavit.

Victor Juarez, Xclusive's workers' compensation claims manager, stated in his affidavit that he became aware of Ms. Jiménez's injury on December 10. He prepared a First Report of Injury on December 11, noting that the injury occurred when Ms. Jiménez "was placing the pillow cases on the pillows." (Ex. 15.) Mr. Juarez mailed Ms. Jiménez a "Choice of Physicians" form, which she received. He telephoned her to confirm she received it and authorized Ms. Jiménez to visit Concentra Medical Center if she needed emergency care.

Ms. Jiménez visited Concentra, where providers noted she experienced "[p]ain R shoulder while fluffing a pillow," and "no prior injury." (Ex. 2 at 1.) After two additional visits to Concentra,[2] Xclusive denied the claim on January 26, 2016.

Ms. Jiménez sought unauthorized emergency care at Vanderbilt on April 2. Notes from the visit indicate she "injured her right shoulder approximately 5 months ago while folding laundry." (Ex. 2 at 21.) Providers there diagnosed a "possible rotator cuff injury. Adhesive capsulitis is also high on the differential." She returned to Vanderbilt on April 8. Notes from that visit give a history of Ms. Jiménez injuring her shoulder "while performing housekeeping duties at her work." (Ex. 15.) Vanderbilt providers referred her to Siloam Family Health Care.

Ms. Jiménez went to Siloam in May, where Kimberly Thornton, PA-C noted, "[I]njured shoulder while at work (in a hotel) putting a pillow into its case, using shaking motion to get pillow into case and on third shake felt pop and pain to R shoulder." (Ex. 2 at 17.) Ms. Thornton referred her to an orthopedist at Siloam, Dr. William Mayfield, who confirmed her history. Dr. Mayfield assessed a right rotator cuff tear and adhesive capsulitis and ordered an MRI. The MRI, which did not take place until September, revealed "[t]earing of the distal supraspinatus tendon superimposed upon a background of chronic tendinopathy" and "[a]cromioclavicular and glenohumeral joint osteoarthrisis; mild." *Id.* at 44. Ms. Jiménez saw Dr. Craig Morrison at Siloam in October and provided a similar history. Ms. Jiménez testified she remains in pain and needs further treatment, requesting a panel of orthopedic specialists.

To contest Ms. Jiménez's version of how and when she became injured, Xclusive noted the varying accounts of the alleged mechanism of injury in the medical records as previously described. It also relied on two affidavits, one from her former co-worker and

---

[2] The Concentra records also noted Ms. Jiménez's work restrictions, and much of Mr. Juarez's affidavit discussed Xclusive's efforts to accommodate them. However, since the only issue before the Court at this time is the compensability of Ms. Jiménez's claim, this opinion omits facts and analysis relative to that issue.

cousin, Olga Jiménez, and another from former co-worker/relative, Zulema Maldonodo. (Exs. 8, 9.)[3] They reside in Florida and executed the affidavits in January 2017 about a conversation from May or June 2015. Olga Jiménez recounted that Rosa Jiménez mentioned that she fell over a bed and injured her right arm while working at a different hotel, Hilton Garden Inn. Ms. Maldonodo recalled that Rosa Jiménez reported tripping over a bed and injuring the top part of one of her arms but could not remember which arm. During her testimony, Rosa Jiménez acknowledged tripping over a bed but said the only injury was to her knee.

Xclusive further noted that the Petition for Benefit Determination reads that Ms. Jiménez "was making a bed by pulling the sheets down and lifting up the mattress, when she injured her right shoulder." Ms. Jiménez's counsel explained that his staff completed the form rather than Ms. Jiménez. Xclusive also pointed to testimony from Violeta Sanchez Dedelgado, a friend of Ms. Jiménez, who stated Ms. Jiménez told her in December 2015 she hurt her shoulder "doing some lifting" at work.

*Medical causation*

Ms. Jiménez's counsel sent a letter in January 2017 seeking Dr. Mayfield's opinion. (Ex. 3.) Counsel asked, "Is it your opinion that Ms. Jiménez's current right shoulder injury arose primarily out of and in the course and scope of her employment on or about December 9, 2015?" Dr. Mayfield checked "yes" and indicated that she requires further treatment.

In response, Xclusive hired Dr. Sean Kaminsky, a board-certified orthopedic surgeon and shoulder specialist, to perform a record review and offer an opinion on causation. Dr. Kaminsky noted that the MRI findings reflected events that took time to develop, and he stated that daily activities could lead to thinning and partial or even complete tearing of the rotator cuff. Dr. Kaminsky wrote that her bone spurs indicated age-related conditions and, along with other arthritic indicators, likely contributed to her shoulder pain and pre-dated the work injury. In observing the varying descriptions of the injury in the submitted medical records, Dr. Kaminsky felt it unlikely a tear would occur performing those activities. Dr. Kaminsky also reviewed the affidavits of Olga Jiménez and Ms. Maldonodo. He remarked on the "discrepancies in the reported mechanism of injury" among the different providers. Dr. Kaminsky concluded, "[W]ith review of the history of injury, imaging findings, physical examination results, history of diabetes and possible preceding or prior injury, the injury of December 9, 2015 was not causative of this patient's shoulder pain and need for subsequent treatment." (*See generally* Ex. 13.)

---

[3] The Affidavit of Olga Jiménez states, "I, *Irma Chavez,* after having been first duly sworn . . . [.]" (Emphasis added.) The Court presumes this was an oversight.

## Findings of Fact and Conclusions of Law

The Court must apply the following general legal principles. Ms. Jiménez, as the employee, has the burden of proof on the essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Resolution of the dispute regarding the alleged mechanism of injury requires that this Court make credibility determinations. The Tennessee Supreme Court gave indicia of witness credibility as consideration of whether a witness is "calm or agitated, at-ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." *Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Here, this Court observed Ms. Jiménez's demeanor and finds that she appeared calm, at-ease, self-assured, confident and forthcoming. While Xclusive identified inconsistencies in her testimony, arguing these suggest problems with Ms. Jiménez's credibility or memory, the Court disagrees and finds she was generally a credible witness. "Even if minor and insignificant details vary, an injured worker should not be penalized simply for being a poor historian." *Orman v. Williams Sonoma,* Inc., 803 S.W.2d 672, 677 (Tenn. 1991).

Turning now to whether Ms. Jiménez sustained an injury as defined under the Workers' Compensation Law, that definition requires that she must show she suffered an "injury by accident . . . arising primarily out of and in the course and scope of employment . . . that causes the need for medical treatment[.]" She must further show that the employment contributed more than fifty percent in causing the need for medical treatment, considering all causes. Tenn. Code Ann. § 50-6-102(14) (2016).

Applying the statutory definition, Ms. Jiménez credibly testified that she was shaking a pillow in an attempt to place it inside a pillow case when she felt sudden pain in her right shoulder. Xclusive argued she gave varying accounts of how she sustained injury to providers. For example, she told Vanderbilt staff she was "folding laundry" and Concentra providers that she was "fluffing a pillow." This argument ignores the alternative histories, which coincide with her testimony, that she gave to providers at Vanderbilt at her return visit, as well as to Ms. Thornton and Drs. Mayfield and Morrison at Siloam and most significantly the history that Mr. Juarez noted in the First Report of Injury two days after the event. This argument also ignores the occasional difficulties inherent in the interpretation of one language to another, which this Court witnessed during the hearing. The Court finds that Ms. Jiménez sustained an injury to her shoulder during her work on December 9, 2015.

In making this finding, the Court rejects Xclusive's arguments that Ms. Jiménez hurt her shoulder during a fall in summer 2015. Ms. Jiménez credibly testified that she did not hurt her shoulder from the fall. The Court accredits her detailed, in-person testimony over the affidavits, which recalled conversations from approximately a year and a half before execution of the affidavits and offered sparse detail. It is also noteworthy that Xclusive offered no medical records containing a reference to a prior shoulder injury. As for the assertion that she was lifting a mattress when she became injured, Ms. Jiménez's counsel acknowledged the error in the Petition for Benefit Determination. It is significant that Ms. Jiménez did not sign this pleading but rather her counsel did. Further, the Court accredits Ms. Jiménez's first-hand account of how she became injured in her testimony over that of Ms. Dedelgado, who offered a recollection of what Ms. Jiménez told her over a year and a half ago.

Having concluded that a work-related event occurred on December 9, the Court turns to the issue of medical causation. To make this determination, the Court must weigh the opinions of competing experts. A trial court has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Brees v. Escape Day Spa & Salon,* 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.*

Applying these standards, both doctors are orthopedists. Xclusive submitted the curriculum vitae of Dr. Kaminsky and argued that it supported the superiority of his opinion over Dr. Mayfield, for whom no CV was submitted. Dr. Mayfield saw Ms. Jiménez upon an orthopedic referral from Ms. Thornton at the same clinic. The Court carefully examined Dr. Kaminsky's CV for evidence of additional expertise in determining causation of injuries. The Court noted a few published articles on shoulder injuries and an award from his own employer for excellence in shoulder surgery. The submission of a CV does not alone establish one doctor's opinion over another. This factor favors neither doctor.

As for the circumstances of their evaluations, in May 2016 Dr. Mayfield actually examined Ms. Jiménez, provided medical treatment and recommended diagnostic studies. These studies did not occur until September 2016. There is no record that Dr. Mayfield saw her after this first visit, though she did make return visits to Siloam regarding her shoulder. In contrast, Dr. Kaminsky never saw Ms. Jiménez and merely performed a record review in early 2017. This factor favors Dr. Mayfield, but only slightly.

As for the information available to them and the evaluation of the importance of that information through other experts, it is unknown whether Dr. Mayfield reviewed the Concentra records, but the Siloam records contained copies of the Vanderbilt records, including the MRI report. Dr. Mayfield's opinions appear in a letter dated January 2017. Dr. Kaminsky considered not only the medical records but also the affidavits offering an

5

alternative mechanism of injury. There is no indication he reviewed Ms. Jiménez's affidavit. It appears to the Court that his conclusion is based, at least in part, on a credibility assessment of these affidavits and of the varying medical history reports, which this Court previously concluded favor of the credibility of Ms. Jiménez. Further, while Xclusive argued the Court should place little weight on Dr. Mayfield's opinion because he did not review the MRI findings, the record is actually silent as to whether or not he reviewed them.

In sum, weighing all these factors, the Court accredits Dr. Mayfield's opinion. Thus, Ms. Jiménez has come forward with sufficient evidence for this Court to conclude she is likely to succeed at a hearing on the merits that she sustained an injury arising primarily out of and in the course and scope of employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Xclusive or its workers' compensation carrier shall provide Ms. Jiménez with medical treatment made reasonably necessary by the December 9, 2015 injury, to be initiated by providing a panel of orthopedic specialists.

2. This matter is set for a Scheduling Hearing on **July 27, 2017, at 8:30 a.m. Central time. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing.** Failure to call may result in a determination of the issues without your further participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

        **ENTERED this the 8th day of June, 2017.**

        **JUDGE KENNETH M. SWITZER**
        **Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Ms. Jiménez's Affidavit
2. Compilation Medical Records
3. Dr. Mayfield Causation letter
4. First Report of Injury (electronic)[4]
6. Denial
7. Affidavit of Olga Jiménez
8. Affidavit of Zulema Maldonodo
9. Affidavit of Javier Sepulveda
10. Affidavit of Dr. Kaminsky with attached C.V.
11. Affidavit of Victor Juarez
12. Employee Response to Interrogatories
13. Dr. Kaminsky Record Review Report
14. Vanderbilt medical record, April 8, 2016 (also in Ex. 2, p. 27)
15. First Report of Injury
16. Petition for Benefit Determination (hard copy)
17. Affidavit of Javier Sepulveda (Introduced at the Expedited Hearing; for identification only)

Technical Record:
1. Petition for Benefit Determination
2. Employer's Position Statement
3. Employee's Position Statement
4. Employer's Supplemental Position Statement
5. Dispute Certification Notice
6. Request for Expedited Hearing
7. Employer's Response to Request for Expedited Hearing
8. Employer's Pre-hearing Brief

---

[4] The Court did not admit pre-marked Exhibit 5 into evidence.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of June, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|-----------|-----------|---------------|
| Michael Fisher, Employee's Attorney | | | | | X | mfisher@ddzlaw.com |
| Colin McCaffrey, Employer's Attorney | | | | | X | Colin.McCaffrey@SA-Trial.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8